**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated: May 20 2016**

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 14-34053 |
| | ) | |
| Olga Creeger, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 15-3023 |
| | ) | |
| Justin Doyle, | ) | Judge John P. Gustafson |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Olga Creeger, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF DECISION AND ORDER REGARDING
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Justin Doyle ("Plaintiff") made payments to the University of Toledo for tuition in the amount of $26,139.37 on behalf of Defendant Olga Creeger. Defendant Olga Creeger ("Defendant" or "Debtor") is the debtor in the underlying Chapter 7 case. [Case No. 14-34053, Doc. # 1]. Plaintiff commenced this adversary proceeding, requesting that the court find that the debts of the Debtor, specifically the $26,139.37 paid by Plaintiff to the University of Toledo, "be held

non-dischargeable as a qualified educational loan under 11 U.S.C. § 523(a)(8)(B)." [Doc. # 1, p. 3].

Plaintiff's Complaint alleges that the payments made to the University of Toledo were on Defendant's behalf and at no time were to be considered a gift. [*Id.* at ¶ 6]. Plaintiff argues that the amount paid to the University of Toledo on Defendant's behalf is a qualified educational loan pursuant to 11 U.S.C. §523(a)(8)(B). Accordingly, it is Plaintiff's position that the amount of $26,139.37 should be held non-dischargeable in Defendant's underlying Chapter 7 case. Plaintiff also seeks legal fees, the costs of this action, and any other remedy the court would find appropriate. [*Id.* at p. 3].

This proceeding is now before the court for decision on Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") [Doc. # 17], Defendant's Motion for Summary Judgment ("Defendant's Motion") [Doc. # 18], Plaintiff's Response and Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Response") [Doc. # 20], and Defendant's Response to Plaintiff's Motion for Summary Judgment ("Defendant's Response") [Doc. # 21].

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising in or related to a case under Title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. §157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine the dischargeability of debts are core proceedings that the court may hear and decide. 28 U.S.C. §157(b)(1) and (b)(2)(I).

This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the submitted materials, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, the court finds that there are genuine issues of material fact as to whether or not Defendant's debt owed to Plaintiff is an "educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986" under 11 U.S.C. §523(a)(8)(B).

Therefore, Defendant's Motion will be denied, and Plaintiff's Motion will be denied

.

2

## **FINDINGS OF FACT**

The following facts were stipulated to by both parties and submitted to the court as follows:

1.  From approximately July of 2004 until June of 2006, Plaintiff Justin Doyle made payments to the University of Toledo for tuition in the amount of $26,139.37 on behalf of Defendant, Olga Creeger.

2.  At all times, it was understood between the parties that these payments constituted loans from Plaintiff to Defendant that full repayment was expected on all amounts due and owing.

3.  As a result of the payments made by Plaintiff, Defendant attended the University of Toledo.

4.  The debt owed to Plaintiff was converted from an oral agreement to a Promissory Note ("Note") executed on or about September 8, 2009, by Defendant Olga Creeger in the principal sum of Twenty-six thousand, one hundred and thirty nine and 37/100 dollars ($26,139.37), plus interest as set forth in the Note.

5.  On or about November 3, 2014, the Note was converted to judgment in Lucas County Court of Common Pleas case no. CI 2014-02708.

[Doc. # 13, pp. 1-2].

In her Motion, Defendant states that she and Plaintiff were "in a dating relationship" at the time Plaintiff caused the University of Toledo to be paid on Defendant's behalf. [Doc. # 18, p. 4]. At the time she attended the University of Toledo, Defendant was "doing so on a student visa and was not eligible for qualified student loans and as a noncitizen . . . had insufficient credit to obtain personal loans to pay for her education . . . ." [*Id.*]. These assertions were not supported by an affidavit.

Defendant Debtor filed her Chapter 7 petition on November 5, 2014. Her bankruptcy Schedule F shows a claim owed to Justin Anthony Doyle in the amount of $26,500.00. [Case No. 14-34053, Doc. # 1, p. 16].

In addition to the stipulated facts, Plaintiff attached a photocopy of a Note as an exhibit. [Doc. # 1, Pl. Ex. A, p. 5]. The Note was executed "in the County of Wood, State of Ohio, City of Bowling Green" and was notarized by a State of Ohio Notary Public. The Note provided for Defendant to repay Plaintiff in a series of installment payments, until the balance due was paid in full. The Note was void of any language referring to the balance due as being derived from an educational loan, qualified or otherwise. Defendant admitted the authenticity of the Note on her

3

Answer. [Doc. #8, ¶ 7].

No affidavits were filed by either Plaintiff or Defendant.

**LAW AND ANALYSIS**

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986).

The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id.* "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. *Berryman v. Rieger,* 150 F.3d 561, 566 (6th Cir. 1998).

Where the parties have filed cross-motions for summary judgment, the court must consider each motion separately on its merits, since each party, as a movant for summary judgment, bears the burden to establish both the nonexistence of genuine issues of material fact and that party's entitlement to judgment as a matter of law. *Lansing Dairy v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 463 n.6 (6th Cir. 1999).

The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate. "When parties file cross-motions for summary judgment, 'the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing

4

party waives judicial consideration and determination whether genuine issues of material fact exist.'" *Parks v. LaFace Records*, 329 F.3d 437, 444-445 (6th Cir. 2003)(*quoting, B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 593 (6th Cir. 2001)); 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* §2720 (1998).

## II. Exceptions to Discharge Under 11 U.S.C. §523(a)(8)

Plaintiff seeks to have the debt owed to him be found nondischargeable based upon the "undue hardship" exception to nondischargeability of such debt in 11 U.S.C. §523(a)(8).

Pursuant to 11 U.S.C. §523(a)(8), the following claims are excepted from discharge:

> (A) (I) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

Section 523(a)(8) excepts four categories of educational claims from a debtor's discharge: (1) loans made, insured, and/or guaranteed by governmental units; (2) loans made under any program partially or fully funded by a governmental unit or a nonprofit institution; (3) claims for funds received as an educational benefit, scholarship, or stipend; and (4) any "qualified educational loan" as that term is defined in the Internal Revenue Code. *In re Rumer*, 469 B.R. 553, 561 (Bankr. M.D. Pa. 2012); *see also, In re Corbin*, 506 B.R. 287, 291 (Bankr. W.D. Wash. 2014), *but see*, *In re Oliver*, 499 B.R. 617, 622-623 (Bankr. S.D. Ind. 2013)(*Rumer*'s fourth category does not accurately state what is in the statute - it leaves out the first six words: "any other educational loan that is".).

Plaintiff argues that the amount he paid to the University of Toledo on Defendant's behalf falls under the fourth category defined by the *Rumer* court: a "qualified education loan." The term is defined in the Internal Revenue Code of 1986 as follows:

> (d) Definitions.--For purposes of this section–
>
> (1) Qualified education loan.--The term "qualified education loan" means any indebtedness incurred by the taxpayer solely to pay qualified higher

5

education expenses–

> (A) which are incurred on behalf of the taxpayer, the taxpayer's spouse, or any dependent of the taxpayer as of the time the indebtedness was incurred,
> (B) which are paid or incurred within a reasonable period of time before or after the indebtedness is incurred, and
> © which are attributable to education furnished during a period during which the recipient was an eligible student.
> Such term includes indebtedness used to refinance indebtedness which qualifies as a qualified education loan. The term "qualified education loan" shall not include any indebtedness owed to a person who is related (within the meaning of section 267(b) or 707(b)(1)) to the taxpayer or to any person by reason of a loan under any qualified employer plan (as defined in section 72(p)(4)) or under any contract referred to in section 72(p)(5).

26 U.S.C.A. §221(d)(1) (West 2014).

"Qualified higher education expenses" is, in turn, defined as expenses associated with an "eligible educational institution". There does not appear to be any dispute that the University of Toledo is an "eligible educational institution". *See generally, Decena v. Citizens Bank (In re Decena)*, 2016 WL 1371031 at *6, 2016 Bankr. LEXIS 1078 at **17-18 (Bankr. E.D.N.Y. April 4, 2016).

For purposes of §523(a)(8)(B)'s reference to "section 221(d)(1) of the Internal Revenue Code of 1986", the term "taxpayer" in §221(d)(1) appears to refer to the person in bankruptcy seeking to discharge a debt.

### III. Interpreting Section 523(a)(8)(B).

In interpreting the exceptions to discharge under Section 523(a), the Sixth Circuit has held that there is a "general rule that exceptions to discharge in §523(a) must be narrowly construed." *Bd. of Trustees v. Bucci (In re Bucci)*, 493 F.3d 635, 642 (6th Cir. 2007); *Meyers v. IRS (In re Meyers)*, 196 F.3d 622, 624 (6th Cir. 1999); *see also, Kawaauhau v. Geiger*, 523 U.S. 57, 62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Courts must limit the Bankruptcy Code's discharge exceptions to those "plainly expressed." *Bullock v. BankChampaign, N.A.*, 569 U.S. ___, 133 S. Ct. 1754, 1760, 185 L.Ed.2d 922 (2013).

"In ascertaining the plain meaning of the statute, the court must look to the particular

6

statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S. Ct. 1811, 100 L. Ed. 2d 313 (1988); *Andrews Univ. v. Merchant (In re Merchant)*, 958 F.2d 738, 739 (6th Cir. 1992)("To ascertain the Congressional intent we review the language of the statute together with the design and policy underlying the overall statutory scheme.").

The burden of proof as to the existence of a debt, and the status of the obligation as an "educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986" is on the lender. "The cases interpreting § 523(a)(8) have held that the initial burden[1] is on the lender to establish the existence of the debt and to demonstrate that the debt is included in one of the four categories enumerated in § 523(a)(8)." *Rumer v. Am. Educ. Servs. (In re Rumer)*, 469 B.R. 553, 561 (Bankr. M.D. Pa. 2012)(citing cases); *Brown v. Citibank N.A. (In re Brown)*, 539 B.R. 853, 857 (Bankr. S.D. Cal. 2015); *In re Roth*, 490 B.R. 908, 916-17 (B.A.P. 9th Cir. 2013)("the lender has the initial burden to establish the existence of the debt and that the debt is an educational loan within the statute's parameters . . .").

Most of the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") became effective in bankruptcy cases filed on or after October 17, 2005. *See e.g.*, *In re Gomery*, 523 B.R. 773, 784 n.11 (Bankr. W.D. Mich. 2015). Although some of the tuition payments pre-date the effective date of §523(a)(8)(B), because the provision applies to bankruptcy cases filed after the effective date, the transactions in issue are either dischargeable or nondischargeable under the version of §523(a)(8) in effect at the time the Chapter 7 case was filed.

The other timing issue involves when the obligation for the tuition payments had to meet the legal requirements for an "educational loan" under §523(a)(8)(B). The court holds that the obligation in issue would have to be an educational loan at the time the tuition payments were made, or within a reasonable period of time before or after the tuition payments were made.[2] While "indebtedness used to refinance indebtedness which qualifies as a qualified education loan" remains nondischargeable under the statute, refinancing debt that does <u>not</u> qualify as an educational loan

---

[1]/ This is in contrast to the issue of "undue hardship", where the burden of proof is on the debtor. *See e.g.*, *Lowe v. ECMC (In re Lowe)*, 321 B.R. 852, 857 (Bankr. N.D. Ohio 2004).

[2]/ This appears to be consistent with 26 U.S.C. §221(d)(1)(B), which provides: "which are paid or incurred within a reasonable period of time before or after the indebtedness is incurred, . . .".

7

cannot turn such an obligation into a nondischargeable educational loan.

##### IV. Issues And Arguments.

###### A. Plaintiff's Arguments Based On *Varity Corp*.

In his Motion, Plaintiff asserts that very little precedent exists[3] regarding whether "an individual making a qualified education loan to another individual can avail him or herself of the exception to discharge under [Section 523(a)(8)]." [Doc. # 17, p. 6]. In the absence of specific case law guidance, Plaintiff cites to a Supreme Court decision on statutory interpretation.

Plaintiff's Motion cites to the Supreme Court case of *Varity Corp. v. Howe*, 516 U.S. 489, 116 S. Ct. 489, 134 L.Ed.2d 130 (1996), wherein the Supreme Court found that a specific ERISA enumeration followed by a broader "catchall" provision did not require an application of the more specific provision. As a result, the plaintiffs in *Varity* were allowed to proceed under the broader "catchall" provision. Plaintiff seeks to apply the same *Varity* ERISA statutory interpretation to this court's interpretation of Section 523(a)(8).[4] Here, that would mean that the limitations contained in §523(a)(8), regarding the types of lenders who are protected by the statute, would not apply to §523(a)(8)(B).

Plaintiff posits that "the catch-all provision of subsection B is no longer limited by the more specific references contained in subsection A to governmental and non-profit lenders." [*Id.* at p. 8]. Should the court use such an interpretation in deciding this case, Plaintiff believes that the class of lenders discussed is subsection A would be broadened to include the loan made by an individual such as Plaintiff, if the loan were a "qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986". Thus, the debt in issue - which Plaintiff asserts is a "qualified educational loan" - would be nondischargeable.

One problem with this interpretation is that it appears to be contrary to the longstanding

---

[3]/ As it relates to many of the issues presented here, Plaintiff is correct. There is very little case law applicable to the issues raised in this action. The discussion of the problems associated with applying an oral agreement to a complex statutory framework is not a criticism of counsels' presentation of this matter to the court.

[4]/ In contrast, in interpreting a different subsection of Section 523(a), the Sixth Circuit declined to adopt a broader definition of "fiduciary" used in ERISA. *See*, *Bd. of Trustees v. Bucci (In re Bucci)*, 493 F.3d 635, 642 (6th Cir. 2007)("[T]he Sixth Circuit has repeatedly construed "the term 'fiduciary capacity' found in the defalcation provision of § 523(a)(4) more narrowly than the term is used in other circumstances." *In re Blaszak*, 397 F.3d at 391. This definition does not match the definition of an ERISA fiduciary.").

8

public policies underlying the nondischargeability of student loans as embodied in §523(a)(8), long before the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 added §523(a)(8)(B).[5]

> This provision balances two competing policy objectives: (1) the honest but unfortunate debtor's right to a fresh start; and (2) the need to protect the financial integrity of student loan programs so that lenders will loan money to individuals who would not meet the traditional underwriting standards for such loans. *Gorosh v. Posner (In re Posner)*, 434 B.R. 800, 803 (Bankr. E.D. Mich. 2010).

*Lamento v. United States Dep't of Educ. (In re Lamento)*, 520 B.R. 667, 675 (Bankr. N.D. Ohio 2014); *see also*, *In re Segal*, 57 F.3d 342, 348 (3rd Cir. 1995)("Although limited, the legislative history of section 523(a)(8) teaches that the exclusion of educational loans from the discharge provisions was designed to remedy abuses of the educational loan system by restricting the ability of a student to discharge an educational loan by filing for bankruptcy shortly after graduation, and to safeguard the financial integrity of educational loan programs. *See, e.g.*, 124 Cong. Rec. 1791-98 (1978); . . ."); *see also*, *Andrews Univ. v. Merchant (In re Merchant)*, 958 F.2d 738, 741 (6th Cir. 1992)(stated in interpreting the version of §523(a)(8) in effect prior to November 29, 1990: "Congress enacted 11 U.S.C. 523(a)(8) in an effort to prevent abuses in and protect the solvency of the educational loan programs.").

A private individual paying tuition for another person is not a "loan program". Prior to the enactment of §523(a)(8)(B), a debt contract between two individuals was not a nondischargeable student loan under the pre-BAPCPA version of §523(a)(8). *See*, *London-Marable v. Sterling*, 2008 WL 2705374, 2008 U.S. Dist. LEXIS 106452 (D. Ariz. July 9, 2008)(finding a loan agreement between individuals to be dischargeable, stating: "Clearly the financial integrity of such educational loan programs is not implicated here by discharging a private debt."); *Siegel v. U.S.A. Group Guarantee Servs. (In re Siegel)*, 282 B.R. 629, 632 (Bankr. N.D. Ohio 2002)("student loans made

---

[5] When §523(a)(8) was enacted as part of the original 1979 Bankruptcy Code, the provision contained a subsection (A), which allowed student loans to be discharged based on when they first became due, and a subsection (B), which made student loans dischargeable if they would impose an "undue hardship". When Congress amended the student loan discharge provision as part of the Higher Education Amendments of 1998, the ability to discharge the debt based on the age of the loan was eliminated, along with the subsection format. The 2005 Amendments returned to the subsection (A) and (B) format, with a new §523(a)(8)(B) added, dealing with "qualified education loans".

entirely by private entities are, in the absence of other grounds for nondischargeability, dischargeable debts within the meaning of §523(a)(8).”); *In re Reis*, 274 B.R. 46, 50 (Bankr. D. Mass. 2002)(“The Debtor's obligation arose out of a loan extended by a private party; the loan was not made pursuant to a student loan program of a governmental unit or a nonprofit entity. Therefore, the Court rules that the debt owed to Caterina does not qualify as a student loan and does not come within the exception to discharge under § 523(a)(8).”).

It should be noted that the statutory interpretation argument advanced by Plaintiff is not supported by a public policy justification for the expansion of one of the Bankruptcy Code's harshest nondischargeability provisions to individual lenders, nor is there any legislative history that would suggest that Congress intended to expand the statutory protection in this manner.

Yet, there is still the issue of the statute's "plain meaning". The limiting language, regarding lenders and guarantors, is set forth in §523(a)(8)(A)(I), and is not repeated or specifically incorporated by reference in §523(a)(8)(B).

Nevertheless, one court has stated:

> Section 523(a)(8) was amended in 2005 by Congress to make a broader range of student loan debt nondischargeable, regardless of the nature of the lender. Specifically, Section 523(a)(8)(A)(ii) was added, covering loans made by nongovernmental and profit-making organizations, and making nondischargeable "an obligation to repay funds received as an educational benefit, scholarship, or stipend." Unlike under 523(a)(8)(A)(I) or 523(a)(8)(B), there is no requirement under 523(a)(8)(A)(ii) that the obligation be in any way related to a government unit.

*Benson v. Corbin (In re Corbin)*, 506 B.R. 287, 296 (Bankr. W.D. Wash. 2014).

Unfortunately, *Corbin* does not provide an explanation of why the "governmental unit" requirement would apply to §523(a)(8)(B). The quoted language regarding "regardless of the nature of the lender" would not appear to apply to §523(a)(8)(B), as §221(d)(1) of the Internal Revenue Code of 1986 specifically excludes, for example, lenders who are "related" to the "taxpayer"[6]. *See*, 26 U.S.C. §221(d)(1)(c).

Because there are other reasons why summary judgment is not appropriate under

---

[6]/ Although the term "related" is defined in 26 U.S.C. §267(b) in a manner somewhat similar to the term "insider" in 11 U.S.C. §101(31), there is a difference - the term "insider" <u>includes</u> a list of closely related entities, while §267(b) states: "the persons referred to in subsection (a) <u>are</u>:".

§523(a)(8)(B), the court declines to decide (at this time) what limitations, if any, from §523(a)(8)(A) apply to subsection (B).[7] *Cf.*, *Tree of Life Christian Schools v. City of Upper Arlington*, 2016 WL 2897658 at *5, 2016 U.S. App. LEXIS at *13 (6th Cir. May 18, 2016)("We need not definitively choose among the various tests used by other circuits in order to resolve this case. Granting summary judgment to the [movant] is erroneous under any test, because 'summary judgment must be denied in a proceeding for equitable relief . . . where genuine issues of material fact exist.'").

### B.    Was There A "Loan" Under Federal Case Law?

The Supreme Court has often said that every clause and word of a statute should, if possible, be given effect. See, *Chickasaw Nation v. United States,* 534 U.S. 84, 93, 122 S.Ct. 528, 535 (2001). And the Supreme Court also acknowledged that "[t]he canon requiring a court to give effect to each word '*if possible*' is sometimes offset by the canon that permits a court to reject words 'as surplusage' if 'inadvertently inserted or if repugnant to the rest of the statute . . . .'" *Chicasaw Nation*, 534 U.S. at 94, 122 S.Ct. at 535 (*quoting*, K. Llewellyn, *The Common Law Tradition* 525 (1960)).

The 2005 amendments to the Bankruptcy Code changed the provisions of §523(a)(8), fragmenting part of the statute that had previously been an integrated whole[8], and adding §523(a)(8)(B). Recently, in connection with interpreting another section of §523(a), the Supreme Court has noted that: "When 'Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.'" *Husky Int'l Electronics v. Ritz*, 2016 WL 2842452 at *4, 2016 U.S. LEXIS 3048 at *8 (May 16, 2016).

Section 523(a)(8)(B) holds nondischargeable "any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual." The first clause requires that the obligation in issue be an "educational loan" before the determination is made that the loan is a "qualified educational loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986".

As the *Oliver* court recognized, Congress has expanded the reach of Section 523(a)(8) "over

---

[7]/ Of course, for Plaintiff to prevail, the court would have to find that subsection (B) did not require the involvement of a "governmental unit" or a "nonprofit institution".

[8]/ *Decena v. Citizens Bank (In re Decena)*, 2016 WL 1371031 at *4, 2016 Bankr. LEXIS 1078 at **11 (Bankr. E.D.N.Y. April 4, 2016).

11

the years", which has included more student loans in the exception from discharge. *In re Oliver*, 499 B.R. 617, 623 (Bankr. S.D. Ind. 2013)[9]. However, Congress retained the phrase "any other educational loan" at the beginning of §523(a)(8)(B) , which makes it clear that for an "educational loan" to be excepted from discharge, it must still be a loan. *Id.* This retains a distinction made in pre-BAPCPA case law.

In 2003, the Seventh Circuit in *In re Chambers,* 348 F.3d 650, 657 (7th Cir. 2003) looked to the common law definition of a "loan" as set forth in *In re Grand Union Co.*, 219 F. 353, 356 (2d Cir. 1914)[10], and as paraphrased in *In re Renshaw*, 222 F.3d 82, 88 (2d Cir. 2000):

> To constitute a loan, there must be (I) a contract, in which (ii) one party transfers a defined quantity of money, services, or goods, to another party, and (iii) the other party agrees to pay for the sum or goods transferred at a later date.

The *Renshaw* court's paraphrasing implies that a contract to transfer items in return for payment at a later date must be reached prior to or contemporaneous with the transfer. "The existence of a separate agreement acknowledging the transfer and delaying the obligation for repayment distinguishes a loan." *In re Chambers*, 348 F.3d at 657.

*Chambers* also noted that the language in 11 U.S.C. §523(a)(2) supports its interpretation. Section 523(a)(2) contains a provision that excepts from discharge an extension of credit to the extent that it was incurred through fraud. "This [extension of credit] language is not employed in § 523(a)(8). The use of the term 'loan' in § 523(a)(8) rather than 'extension of credit'. . . suggests a narrower set of circumstances is contemplated in § 523(a)(8) than in § 523(a)(2)." *Id.*

The facts in this case reflect a transaction that is more in the nature of an extension of credit, as discussed by the *Chambers* and *Renshaw* courts, than it does to a situation where an education loan is incurred by a debtor. Plaintiff made tuition payments for Defendant to attend the University of Toledo from "approximately July of 2004 until June of 2006". [Doc. #13, ¶ 1]. For the entirety of Defendant's time at the University of Toledo, her agreement with Plaintiff was never reduced to

---

[9]/ The *Oliver* decision dealt with a debtor's failure to repay tuition owed to a university. Because the obligation did not constitute a loan, and because the debtor had not received any funds from the university, the obligation was not non-dischargeable under §523(a)(8)(B).

[10]/ The Sixth Circuit also cited the *Grand Union* definition of "loan" in *Andrews Univ. v. Merchant (In re Merchant)*, 958 F.2d 738, 741 (6th Cir. 1992)(a case involving a written loan agreement, interpreting the pre-1990 version of §523(a)(8)).

writing.[11]  In fact, over five years passed,  from the time of the first tuition payment, before the oral agreement was converted to a promissory note, which was executed "on or about September 8, 2009". [*Id.*, ¶ 4].

> On similar facts the *Chambers* court held, under the pre-BAPCPA version of §523(a)(8):
>
> [Creditor] argues that 'objective manifestations' – Ms. Chambers' awareness of the debt and class attendance – provide evidence of an agreement by Ms. Chambers to pay tuition at a later date.  These manifestations are not, however, evidence of a separate agreement showing intent to create a loan (such as a promissory note, other written agreement, or oral promise).  Rather, these 'manifestations' are the basic incurrence of the debt.

*Chambers*, at 658.  The "existence of a separate agreement acknowledging the transfer and delaying the obligation for repayment distinguishes a loan from a mere unpaid debt." *Id.*, at 657.

Notably, *Chambers* does include the possibility of an "oral promise" in its list of examples. However, there is no evidence - other than paragraph 2 of the Statement of Facts - regarding the details of the oral agreement between the parties. [Doc. #13].

In his Motion, Defendant argues that Plaintiff was never a lender in this matter and "simply cannot make a student loan of any sort, qualified or not." [Doc. # 18, p. 6].  While the parties stipulated to the fact that "it was understood between the parties that these payments constituted loans from Plaintiff to Defendant" [Doc. # 13, ¶ 2], the court finds that there is a genuine issue of material fact - despite the stipulation - as to whether or not Plaintiff's payment of Defendant-Debtor's tuition was an educational "loan" as required by the first six words of §523(a)(8)(B) based on the federal case law interpreting the term "loan".

The absence of a contemporaneous written agreement regarding the tuition payment also appears to run afoul of student loan case law that deals with situations where the debtor-borrow argued that §523(a)(8) does not apply because the funds were not used for an educational purpose. For example, in the *Rumer* case, the decision cites with approval: "Section 523(a)(8) is concerned

---

[11]/ In *Andrews Univ. v. Merchant (In re Merchant)*, 958 F.2d 738, 741 (6th Cir. 1992), the Sixth Circuit discussed *Grand Union's* classic (and "broad") definition of a loan and ruled that a "credit extension" extended to the debtor was nondischargeable under 523(a)(8).  However, one of the facts the court relied upon when finding the loan nondischargeable was that the debtor signed forms evidencing her amount of indebtedness before she ever registered for classes.

with the circumstances surrounding the origination of the loan, rather than what benefits the debtor may have derived." *Rumer*, at 562.

Although the parties stipulated that the "payments constituted loans from Plaintiff to Defendant" [Doc. # 13, ¶ 2], there is no evidence before the court that any specific terms ever existed between the parties.[12] Plaintiff and Defendant had an understanding that "full repayment was expected on all amounts due and owing", but the oral agreement was not reduced to writing until the Note was signed "on or about September 8, 2009". [*Id.,* ¶ 4]. The Note did not contain any language that the obligation was for tuition, let alone indicating that Defendant was to repay the balance owed as a result of a "qualified education loan" referred to in §523(a)(8)(B). Similarly, the state court judgment does not reflect any findings regarding the underlying basis for the obligation that is being reduced to judgment. The state court judgment says nothing about the obligation being based upon an educational loan.

The facts before the court reflect that there was no written agreement of any kind at the time of the "origination" of the tuition payments. There was no evidence presented as to the existence (or nonexistence) of the kinds of definite repayment terms that courts typically look at in determining whether an obligation is a "loan" - such as a repayment schedule or due date, and a provision regarding the accrual (or non-accrual) of interest.

Further, when the note was signed, years later, it contained no reference to the origins of the obligation. This type of informal transaction appears to be at odds with the very formal and precise language used to describe the types of loan transactions that will be excepted from discharge under Section 523(a)(8) as a student loan. More specifically, the referenced provisions of the Internal Revenue Code, discussed in connection with the "Qualified Educational Loan" requirement below, appear to have requirements that are inconsistent with an oral agreement.

Plaintiff argues that nothing in §221(d)(1) precludes the tuition payments, and the agreement to repay him for those payments, from being a "qualified educational loan". However, §221(d)(1) is a subsection of a tax statute with a specific purpose: dealing with the deductibility of interest on

---

[12]/ This issue was avoided by the appellate court in *McKay v. Ingleson*, based upon a clear written agreement: "McKay argues that to constitute a loan, the Agreement would have had to sufficiently articulate definite repayment terms. However, the Agreement states that all sums must be repaid by a date certain." *McKay v. Ingleson*, 558 F.3d 888, 891 n.4 (9th Cir. 2009).

14

educational loans. One of the requirements for the deduction of interest on an educational loan is found in Code of Federal Regulation provision 26 CFR 1.221-1(b)(1), which states:

> (b) Eligibility -- (1) Taxpayer must have a legal obligation to make interest payments. A taxpayer is entitled to a deduction under section 221 [26 USCS § 221] only if the taxpayer has a legal obligation to make interest payments under the terms of the qualified education loan.

Even if the obligation in issue were a "loan" - despite the fact that there was no written note or loan agreement[13] - there is no dispute that the Note was not signed until September 8, 2009. [Doc. #1, p. 5]. Interest, under the terms of the Note, does not start to run until June 1, 2009. The obligation is stated in terms of "the principal sum" of $26,139.37 being owed. Under these facts, Plaintiff has not demonstrated that at the time the tuition payments were made, the "taxpayer" [i.e., Defendant-Debtor] had any "legal obligation to make interest payments" - even future interest payments. The absence of an interest provision may not be enough, standing alone, to prevent the obligation to repay tuition from being a "loan" under Section 523(a)(8)(B), but it is part of the larger issue of whether there were any specific terms associated with repayment of the tuition obligation, other than a verbal agreement for repayment.

A complete absence of terms for repayment appears to be inconsistent with the "educational loan" requirement of Section 523(a)(8)(B), and the overall purpose of 26 U.S.C. §221.[14]

The parties' Stipulation does not provide any information about the specific terms of the repayment agreement between Plaintiff and the Debtor-Defendant, if any such specific terms existed. Because the existence or non-existence of specific repayment terms (and the particulars of those terms) appear to be genuine issues of material fact, summary judgment is not appropriate on the issue of whether or not there was a "loan" for purposes of §523(a)(8)(B).

---

[13]/ Ohio Revised Code §1335.02 requires that a "loan agreement" be in writing. However, it is possible that one of the exceptions to this rule, §1335.02(D), may apply because the loan in issue is less than $40,000.

[14]/ At least one commentator has stated that: "Subsection (B) was added in 2005 as part of the Bankruptcy Abuse Prevention and Consumer Protection Act, 420 and exempts "qualified educational loans," as defined by section 221(d)(1) of the Internal Revenue Code, from discharge. In short, if interest payments on the loan qualify for a tax deduction, the loan cannot be discharged." *See*, Doug Rendleman and Scott Weingart, Collection of Student Loans: A Critical Examination, 20 Wash. & Lee J. Civil Rights & Social Just. 215, 273 (Spring, 2014). But this appears to be an overgeneralization. For example, deductibility of student loan interest is phased out for higher income taxpayers, and having higher income would not appear to be relevant to a determination as to whether a loan was either an "educational loan" or a "qualified educational loan" under the statute.

2. **"Taxpayer" Issue -** *LeBlanc*.

The parties have not stipulated to each of the factual elements required for the obligation in issue to be a "qualified educational loan" under Title 26, §221(d)(1). That provision begins: "The term 'qualified education loan' means any indebtedness incurred by the taxpayer. . .". Thus, while there are several other requirements for a 'qualified education loan', §221(d)(1) of the Internal Revenue Code appears to make the dischargeability of an educational loan under §523(a)(8)(B) contingent upon the debtor being a "taxpayer"[15].

A review of the Complaint reflects Plaintiff's allegation that the tuition was paid for a "educational purpose" under §221(d)(1): "Between July 1, 2004 and April 19, 2006, Plaintiff made payments totaling Twenty Six Thousand One Hundred Thirty Nine and 37/100 Dollars ($26,139.37) to the University of Toledo for tuition and tuition fees on Defendant's behalf in exchange for educational purposes as defined in §221(d)(1) of the Internal Revenue Code of 1986." [Doc. #1, ¶5].

The other paragraph of the Complaint that deals with the statutory requirements is paragraph 11, which states:

> The Note and judgment represent an indebtedness incurred by the Defendant solely to pay qualified higher education expenses which were incurred on behalf of the Defendant as of the time the indebtedness was incurred which were paid or incurred within a reasonable period of time before or after the indebtedness was incurred, and are attributable to education furnished during a period during which the Defendant was an eligible student.

[Doc. #1, ¶11].

Defendant's Answer denied the allegations in paragraphs 5 and 11.[16] [Doc. #8, ¶¶5 & 12].

The "WHEREFORE" clause of Plaintiff's Complaint does ask the court to "find that the debts of the Debtor be held non-dischargeable as a qualified educational loan under 11 U.S.C. §523(a)(8)(B); . . .".

Thus, nothing in the Complaint alleges that the Debtor qualifies as a "taxpayer" under

---

[15]/ *See, In re LeBlanc*, 404 B.R. 793, 797 (Bankr. M.D. Pa. 2009).

[13]/ The court notes that Plaintiff's Complaint contains two paragraph 6's and concludes with paragraph 11, while Defendant's Answer contains a paragraph 12. Paragraph 12 of Defendant's Answer is missing the paragraph number to show that it correlates to the allegations set forth in paragraph 11 of Plaintiff's Complaint.

16

"section 221(d)(1) of the Internal Revenue Code of 1986." While the failure to state a claim has been pled as an Affirmative Defense, it has not been asserted as a basis for Summary Judgment, nor has Defendant offered any actual evidence that the Debtor is not a "taxpayer".[17]

Defendant's Motion for Summary Judgment asserts, and Plaintiff has not denied, that Debtor was a non-citizen at the time the loans were made. While the status of a U.S. citizen as a "taxpayer" may be almost taken for granted, case law reflects that is not the case for a non-citizen. *See*, *In re LeBlanc*, 404 B.R. 793 (Bankr. M.D. Pa. 2009).

However, the court will not grant Defendant's motion for summary judgment on the issue of whether or not the debtor was a "taxpayer" under the Internal Revenue Code because there was insufficient factual support presented with Defendant's Motion. The *LeBlanc* decision dealt with a student loan borrower who was a non-citizen, as Defendant alleges she was at the time the tuition payments were made. The bankruptcy court in *LeBlanc* discussed the meaning of the word "taxpayer", and based upon cases like *Morse v. United States*,[18] held that a nonresident alien is not a "taxpayer" until a tax return is filed:

> The conclusion becomes inescapable that even though a nonresident alien may be required to file a return under 26 U.S.C. § 6012, he/she will not become a taxpayer under the IRC unless a return is actually filed, regardless of whether a tax is due. In this case, the unrebutted testimony was that the Debtor did not file a United States tax return during this relevant time period (Audio Record of 02/22/2008 at 9:45 AM), and so she could not have been a taxpayer. If she was not a taxpayer, then the loan extended to her could not have qualified under 26 U.S.C. § 221(d) and would not be a student loan under 11 U.S.C. § 523(a)(8).

*In re LeBlanc*, 404 B.R. 793, 797 (Bankr. M.D. Pa. 2009); *also cf.*, *United States v. NorCal Tea Party Patriots (In re United States)*, 817 F.3d 953, 963 (6th Cir. 2016)("The term 'taxpayer identity' means the name of a person with respect to whom *a return is filed*, . . .")(emphasis in original); *but see*, *Rothkamm v. United States*, 802 F.3d 699, 704-705 (5th Cir. 2015)(26 U.S.C. §7701(a)(14)'s

---

[17]/ It is an interesting question as to who would have the burden of proof as to the Debtor being a "taxpayer". The cases holding that the burden of proof is on the lender to prove that the obligation is a loan qualifies as a student loan do so based, in part, because that "is consistent with the parties' relative access to information". *In re Keenan*, 53 B.R. 913 (Bankr. D. Conn. 1985). Placing the burden of proof on the Debtor to prove that she was not a "taxpayer" at the time the tuition was paid would appear to be consistent with that approach.

[18]/ 494 F.2d 876, 880 (9th Cir. 1974).

definition of "taxpayer" is generally applicable to the entire Internal Revenue Code).

Here, there was no admissible evidence submitted regarding whether or not Defendant had ever filed a tax return prior to the tuition payments being made. Moreover, even if the definition in §7701(a)(14) is used, that "taxpayer" means any person subject to any internal revenue tax, nothing has been submitted that would show that Defendant-Debtor had ever had taxable U.S. income at the time the tuition payments were made. Thus, there is no evidence, either under the *LeBlanc* holding or under 26 U.S.C. §7701(a)(14)'s broader definition of "taxpayer", that Defendant was (or was not) a "taxpayer" for purposes of the statute. There is nothing before the court other than a statement by counsel in Defendant's Motion that Debtor was a non-citizen on a student visa. Accordingly, summary judgment cannot be granted in favor of the Defendant based upon her not being a "taxpayer" at the time the obligation was incurred to repay the amounts paid for her tuition.

### 3. The Payment Of Tuition By Credit Card.

Debtor has presented evidence that the tuition in issue was paid using Plaintiff's Discover Card. [Doc. #19]. Plaintiff's Response does not dispute that the payments were made by credit card. Instead, he argues that the fact that the tuition payments were made by credit card is irrelevant, and cannot contradict the stipulated facts.[19]

While the use of a credit card to pay tuition would appear to prevent the obligation in issue from being nondischargeable under Section 523(a)(8)(B) if Plaintiff were the debtor/"taxpayer", the source of funds is not relevant in a situation where Plaintiff is asserting he was a lender.[20] The IRS definition of "qualified education loan" applies to :"any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses". The regulations associated with §221(d)(1) make it clear that "mixed-use loans", like debts associated with a credit card that is used for expenses other than tuition, are not "qualified education expenses". *See*, 26 CFR 1.221-1(e)(4) Example 6. The problem for Defendant is that she is the "taxpayer" in the statute, not the Plaintiff. Accordingly, the fact that Plaintiff used his credit card to charge items in addition to tuition is not relevant and cannot

---

[19]/ Parties can stipulate to facts. However, they cannot stipulate to legal conclusions. *See*, *Longhorn Partners Pipeline L.P. v. KM Liquids Terminals, L.L.C.*, 408 B.R. 90, 95 (Bankr. S.D. Tex. 2009); *In re Reis*, 274 B.R. 46, 47 n.2 (Bankr. D. Mass. 2002).

[20]/ As discussed above, the separate issue of whether or not the "governmental unit" and/or "non-profit institution requirements of §523(a)(8)(A) apply to §523(a)(8)(B) is not being decided.

18

provide grounds for summary judgment in favor of Defendant.

**4.      No Evidence, Or Pleading, Regarding "Solely".**

The Complaint, and the Stipulation, do not specifically address the statutory requirement that the indebtedness be incurred "solely" to pay "qualified higher education expenses". There appears to be agreement that the tuition was paid directly by Plaintiff, and the statements showing Defendant's credit card payments support that viewpoint. However, the regulations interpreting §221(d)(1) appears to raise an issue (that appears to be one of first impression) that may require additional facts.

In the "Notice of proposed rule making", the Department of the Treasury discussed "mixed use" loans under §221(d)(1). Specifically, it stated:

> The requirement that the indebtedness be incurred solely to pay qualified higher education expenses was added by RRA '98. Accordingly, *mixed use* loans are not qualified education loans. Similarly, revolving lines of credit (e.g., credit card debt) generally are not qualified education loans, unless the borrower uses the line of credit solely to pay qualified higher education expenses.

Deduction for Interest on Qualified Education Loans, 64 F.R. 3257-01 (1999)(emphasis in original).

Here, if Defendant had borrowed other funds from Plaintiff - repaid or not - was her borrowing similar to a "revolving line of credit"? If it was, then under the "mixed use" rule found in the 1999 interpretation, published in the Federal Register, would suggest the loans were not "qualified educational loans". The court has been unable to find instances where this issue involving the "solely" requirement was litigated, but the rule has been cited as an issue in at least one treatise, and two law review articles. *See*, 105 Am. Jur. 2d <u>Federal Taxation</u> ¶18410 (2016)("Similarly, revolving lines of credit generally aren't qualified education loans, unless the borrower uses the line of credit solely to pay qualifying education expenses. Such revolving lines of credit include, for example, credit card debt and a university's in-house deferred payment plan which is a revolving credit account that can include a variety of expenditures in addition to qualified higher education expenses.")(footnotes omitted); Daniel A. Austin, <u>The Indentured Generation: Bankruptcy and Student Loan Debt</u>, 53 Santa Clara L. Rev. 329, 368 (2013)("Mixed-use loans and credit card debt are generally not considered qualified education loans."); Note<u>: Non-Dischargeability of Mixed</u>

19

<u>Student Debt</u>, 13 Cardozo Pub. L. Pol'y & Ethics J. 281, 293-294 (Fall, 2014).

This IRS interpretation of §221(d)(1), regarding the "mixed use" issue, also appears to have been incorporated into the instructions for IRS Form W-9S (Rev. March 2008). *See*, www.irs.gov/uac/about-form-w9s . The instructions for completion of that Form stated: "Do not sign the certification for a mixed use loan because such a loan is not used solely for qualified higher education expenses. However, you may sign the certification for a revolving line of credit or similar loan if you use the line of credit solely to pay for qualified higher education."

The court is not deciding that Plaintiff's other loans to Defendant, if any, would be treated like the IRS appears to treat revolving loans.[21]  But here, the court is without evidence as to: 1) no other loans having been made; or 2) other loans, if made, being separate loan obligations.[22]  As such, it appears that they is a genuine issue of material fact as to whether one of the required elements for nondischargeability, that the indebtedness be "solely" for educational purposes, has been satisfied.

Accordingly, while Plaintiff may have believed that there were no issues relating to the statutory requirement relating to the term "solely", it was not addressed in the Complaint or the Stipulation.  Accordingly, both Motions for Summary Judgment are denied on this basis as well.

<u>**CONCLUSION**</u>

The parties have stipulated that Defendant incurred an obligation to repay Plaintiff's tuition payments to the University of Toledo on her behalf.  However, for the reasons stated above, the court finds there are genuine issues of material fact as to: 1) whether the transaction was a "loan" under existing case law, 2) the Debtor's status as a "taxpayer" under §221(d)(1); and, 3) whether

---

[21]/ To the extent that this "revolving credit" rule is an agency interpretation of 26 U.S.C. §221(d), the court would need to engage in a *Chevron* analysis of whether the statute itself was silent on the issue, and whether the regulation is a permissible interpretation of the statute.  *See e.g.*, *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 52-58, 131 S. Ct. 704, 178 L. Ed. 2d 588 (2011).

[22]/ There does not appear to be any question that if "XYZ Bank" made a mortgage loan in May, and later made a separate qualified educational loan in June, XYZ Bank's student loan would be nondischargeable under Section 523(a)(8), absent a showing of undue hardship.  On the other hand (assuming that court would follow the "revolving credit" rule) if a student charged his or her tuition payment on a credit card, and then used the same card to buy tickets to a rock concert, the credit card company could not assert that the charged tuition - even just the amount attributable to that discrete charge - would be nondischargeable under Section 523(a)(8)(B).  Accordingly, if there had been additional non-tuition borrowing by Debtor from Plaintiff, the issue will be whether those loans should be treated like XYZ Bank's two separate loans, or is there an issue involving the statutory term "solely", as it appears there would be for a credit card obligation.

there were other loans between the parties that would prevent Plaintiff from meeting the "solely" requirement under the IRS's "mixed use" regulations.

Defendant's arguments related to Plaintiff's use of his credit cards to pay the tuition obligations does not appear to present a legally cognizable defense to nondischargeability, and the court will grant partial summary judgment in favor of Plaintiff and against Defendant on that issue.

Therefore, good cause appearing,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment be, and hereby is, **DENIED**, to the extent that the Motion requests the Court to find the $26,139.37 nondischargeable pursuant to 11 U.S.C. §523(a)(8)(B), and **GRANTED**, to the limited extent that Defendant's defense related to Plaintiff's use of his credit cards is not a legally cognizable nondischargeability defense; and

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 18] be, and hereby is, **DENIED**; and

**IT IS FINALLY ORDERED** that a further pretrial on this matter is hereby scheduled to be held on Tuesday, June 21, 2016 at 10:00 a.m.

###

21